IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DESTINEE GEORGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.: |
| ) | 2:21-cv-758-WKW-JTA |
| CLUB TX3, LLC, LAG FIT, INC., ) | |
| XPONENTIAL FITNESS, INC., ) | Demand for Jury Trial |
| LANIE BRAZZELL (individually and ) | |
| in her official capacity), CRAIG ) | |
| BRAZZELL (individually and in his ) | |
| official capacity), CARL O'NEAL ) | |
| (individually and in his official ) | |
| capacity), KATIE GRANTHAM ) | |
| (individually and in her official ) | |
| capacity), and FICTITOUS ) | |
| DEFENDANTS A-Z, those persons, ) | |
| firms, corporations or other entities, ) | |
| who have committed wrongs against the ) | |
| Plaintiff, who are unknown at this time ) | |
| but who will be added by amendment ) | |
| when ascertained, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

COMES NOW Destinee George ("Plaintiff") by her attorney and files this Complaint against CLUB TX3, LLC, d/b/a Club Pilates ("Club"), Lag Fit, Inc. ("Lag"), Xponential Fitness, Inc. ("Fit"), Lanie Brazzell and Craig Brazzell ("Brazzells"), Carl O' Neal ("O'Neal"), Katie Grantham ("Grantham") and Fictitious Defendants A-Z (all aforementioned parties other than Plaintiff may be referred to collectively as "Defendants") and alleges as follows:

1

**PRELIMINARY STATEMENT**

1. This is an action against Defendants under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §2000e, et seq., the Pregnancy Discrimination Act (PDA), 42 U.S.C. 2000e(k) for their unlawful discrimination and retaliation against Plaintiff based on her pregnancy. This action seeks declaratory, injunctive, and equitable relief, as well as monetary damages to redress Defendant's violations of the PDA and state common law causes of action.

2. As her employer, Defendants subjected Plaintiff to pregnancy discrimination and retaliation. After fourteen (14) months of outstanding employment, Plaintiff told Defendants about her pregnancy. Defendants immediately began a campaign of adverse employment actions that were motivated by their discriminatory animus toward Plaintiff's protected status.

3. Defendants then retaliated against Plaintiff when she took photographs of correspondences between members of management discussing ways to further discriminate against Plaintiff. Shortly after Plaintiff engaged in the protected activity of collecting incriminating statements from Plaintiff's own digital personnel file and the unsecured company email, Defendants terminated Plaintiff.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under Title VII and the PDA. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. Plaintiff's claim for attorney's fees and costs is conferred by the enforcement provisions of Title VII, 42 U.S.C. §2000e-5(g)(2)(b)(i).

5. Further, this Court has jurisdiction over the state law claims for outrage, invasive of privacy by false light, invasive of privacy by wrongful intrusion, and defamation in this action pursuant to 28 U.S.C. §1367 because those claims are so related to the federal claims in this action that they form part of the same case or controversy.

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b). All of the events alleged herein occurred within the state of Alabama, and at the time of the events giving rise to this litigation, all of the parties resided in Alabama.

**PARTIES**

7. Plaintiff is a citizen of the United States and a resident of, and domiciled in, Alabama. Plaintiff was an employee of Defendants from around October 3, 2018, to December 3, 2019.

8. Club is a business entity licensed under the laws of the State of Alabama and does business in the State of Alabama.

9. Lag is a business entity licensed under the laws of the State of California and the State of Delaware but does business in the State of Alabama by way of its agency/franchise relationship with Club.

10. Fit is a business entity licensed under the laws of the State of California and the State of Delaware but does business in the State of Alabama by way of its agency/franchise relationship with Club.

11. Lanie and Craig Brazzell are citizens of the United States and residents of, and domiciled in, Alabama. They have owned and operated Club Pilates franchises in Montgomery and Lee Counties, Alabama, since 2017.

12. Katie Grantham is a citizen of the United States and resident of, and domiciled in, Alabama. She was a general manager for Club Pilates in Alabama.

13. Carl O'Neal, Jr. is a citizen of the United States and resident of, and domiciled in, Alabama. He has been licensed to practice law in Alabama since 1985.

14. At all relevant times, Defendants have been employers within the meaning of Title VII. Each Defendant had fifteen (15) or more employees throughout the relevant time period.

**PROCEDURAL REQUIREMENTS**

15. On May 18, 2020, Plaintiff mailed her charge of discrimination to the Equal Employment Opportunity Commission ("EEOC") in Birmingham, Alabama. On May 21, 2020, the EEOC received said charge. The charge was filed with within three hundred (300) days of the occurrence of one or more of the alleged unlawful employment practices that violated 42 U.S.C. §2000e, et seq.

16. On August 12, 2021, Plaintiff received a Notice of Right to Sue from the EEOC. Plaintiff is filing her complaint within ninety (90) days of receiving the Notice of Right to Sue.

**FACTUAL ALLEGATIONS**

17. Plaintiff was employed with Club as a sales associate and instructor for almost a year and half. Her responsibilities included selling Pilates memberships to the public, instructing beginner level Pilates classes, monitoring the facilities during business hours, and general facility cleaning. Plaintiff excelled in this position and gained the confidence of Club's franchisees, Lanie and Craig Brazzell.

18. The Brazzell grew to like and trust Plaintiff to such an extent they asked her to engage in fraud for Club. For example, the Brazzells terminated one of Plaintiff's co-workers who then file for unemployment. The Brazzells required Plaintiff to write a false statement regarding the reasons for the co-worker's termination, which was sent to the unemployment division of the Alabama Department of Labor. The same day the Plaintiff witnessed the Brazzells delete facility

4

security footage of the terminated co-worker so that their statements made to Alabama's Department of Labor were in line with their video footage. Plaintiff avers the Brazzells did these and other acts to other employees to avoid terminated employees claiming unemployment with the State of Alabama.

19. On or about October 31, 2019, Plaintiff found out she was pregnant. The same day Plaintiff informed her then immediate supervisor, Julia Maxwell, of her pregnancy status who then informed Brazells. The felicitations regarding Plaintiff's pregnancy were short-lived. Defendants' attitudes and behavior toward Plaintiff changed shortly after they learned of her pregnancy.

20. At the beginning of November 2019, Katie Grantham became Plaintiff's immediate supervisor, and became hostile toward Plaintiff when Plaintiff tried to discuss conflicts in her work schedule relative to pre-natal medical appointments. More specifically, Plaintiff provided Mrs. Maxwell a written request to be off on a specific date for her 8-week pre-natal appointment. Shortly after Grantham becoming Plaintiff's supervisor, Grantham scheduled Plaintiff to work the date of the 8-week pre-natal appointment.

21. Because of this scheduling conflict, Plaintiff called Grantham to advise about the medical appointment. Grantham asked Plaintiff if the pregnancy was planned and if she had experienced bad "morning sickness." Plaintiff replied that her pregnancy related nausea was worse in the afternoons. Because of that, Plaintiff requested Grantham schedule Plaintiff to work in the mornings, which was Plaintiff's usual schedule anyway. Grantham replied that Plaintiff's pregnancy related nausea was a personal problem and Plaintiff needed to find somebody with some "pregnancy pops" (an over-the-counter medication that temporarily alleviates pregnancy related nausea). Grantham stated to Jayne Carr, one of Plaintiff's co-workers who was present

5

with Grantham during the telephone call, that Plaintiff's pregnancy "is very inconvenient." Over the next month, Ms. George's hours were cut and her opportunities to gain commissions were eliminated.

22. On the morning of November 18, 2019, Lanie Brazzell and Grantham conspired about how best to constructively discharge Plaintiff. Mrs. Brazzell alluded to showing Grantham some of the techniques she and Mr. Brazzell had shown Plaintiff regarding how to keep a terminated employee from successfully claiming unemployment. More specifically, Mrs. Brazzell wrote that Plaintiff could be terminated without being able to claim unemployment because the dates and times for her tardiness and alleged time theft were in such proximity to Plaintiff's notifying the company of her pregnancy that the overlap wouldn't rise any suspicion.

23. Later in the day, using the Defendants' time management software, Grantham wrote Plaintiff up twice. In the preceding fourteen (14) months, Plaintiff had not been written-up—let alone twice in one (1) day. The initial write up was for being late, and the second write up that day was for "stealing time." Grantham wrote that the basis for the second write up was Plaintiff's pregnancy related nausea "on the clock" and that her use of the restroom to deal with the same was considered "stealing time." The following day Plaintiff called Mr. Brazell and asked who she could speak with about Grantham harassing and hostile behavior. Mr. Brazell informed Plaintiff if she attempted to contact anybody about her treatment at work then Plaintiff would "regret it."

24. A few days later, Plaintiff was contacted by the Brazell's private attorney, Carl S. O'Neal, Jr. Mr. O'Neal referred to himself as both the "HR attorney" and "Human Resources Attorney" for Club. He asked Plaintiff to give a statement, which she did.

25. On November 25, 2019, while at the company's Zelda Road location Plaintiff sat beside a co-employee, Isabel Krantz, at the location's front desk. There was a laptop computer used for company business that was kept at the front desk. That evening, Mrs. Krantz had that laptop in her lap when she told Plaintiff that she had found an email with Plaintiff's name as the subject line. Mrs. Krantz reopened the already opened email, and Plaintiff read the contents of the email and took photographs. The email was the November 18, 2019, (conspiratorial) discussion between Mrs. Brazzell and Grantham.

26. On November 30, 2019, (a Saturday) at 8 p.m., Mr. O'Neal called Plaintiff and demanded that she appear at Club's Zelda Road location the next morning. He ordered Plaintiff to bring all emails that Plaintiff had printed off a company computer. Plaintiff informed Mr. O'Neal she had neither accessed nor printed any emails off a company computer. He apologized and abruptly hung up.

27. On December 1, 2019, when Plaintiff arrived at work, Mr. Brazzell was on location, attempting to get the company printer to re-print any recent documents. Mr. Brazzell was acting aggressively, pacing back and forth, and slamming doors, such that another co-employee stated to Plaintiff that Mr. Brazzell's behavior made the co-employee feel uncomfortable. Later, Mr. O'Neal texted a co-worker of the Plaintiff and asked if she would make incriminating statements to the effect that Plaintiff broke into a private email account. Club also contacted another of the Plaintiff's co-workers and asked to make a similar written statement, but she refused. Club thereafter forced that co-worker to resign her position.

28. As a direct and immediate response to Plaintiff's requests for accommodations and her engagement in protected activity, Defendants took adverse employment actions against her as stated above. Mrs. Krantz wrote the incriminating statement and Plaintiff was terminated on

7

December 3, 2019. After Plaintiff's termination, Defendants made a point of telling all co-workers and members of the public that Plaintiff was terminated because she broke into a private company email, stole emails, and stole time. Allegedly, Brazzells and Mr. O'Neal sought criminal charges against Plaintiff.

**STATEMENT OF CLAIMS FOR RELIEF**

### FIRST CLAIM FOR RELIEF
*Sex/Pregnancy Discrimination in Employment;*
*42 U.S.C. §2000e-2(a)(1), 42 U.S.C. §2000e(k)*

29. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

30. Plaintiff, as a pregnant female in the workplace, is a member of a class of citizens protected by Title VII, as amended by the PDA.

31. Defendants were aware of Plaintiff's pregnancy.

32. Defendants knowingly and intentionally discriminated against Plaintiff because of her sex and pregnancy.

33. At all relevant times, Plaintiff performed the functions of her job competently and was qualified for her position with Defendants.

34. Defendants treated Plaintiff less favorably than her similarly situated non-pregnant counterparts.

35. Defendant discriminated against Plaintiff because of her sex and pregnancy, in violation of Title VII, through adverse employment actions carried out by her supervisor (who had consulted with Defendants about potential adverse employment actions against Plaintiff.)

36. Defendants' discriminatory adverse employment actions against Plaintiff included write-ups, direct threats from Brazzells and their counsel, decreased scheduling—which, in turn, decreased Plaintiff's opportunity to make commissions—and termination.

37. The effect of the practices described above has been to deprive Plaintiff of equal employment opportunities, and to otherwise adversely affect her status as an employee because of her sex and pregnancy.

38. Defendants are liable for the acts and omissions of its agents and employees.

39. The sex- and pregnancy-related employment practices and other acts or omissions of Defendants and their agents, supervisors, and employees reflect Defendants' reckless, willful, and wanton indifference or hostility to Plaintiff's protected employment rights and status, directly and proximately resulting in such damages as may be proven at trial, including but not limited to lost income and benefits; lost employment opportunities; psychological, emotional, and mental anguish; distress, humiliation, embarrassment, and degradation; pain and suffering; and attorney's fees in bringing this action.

### SECOND CLAIM FOR RELIEF
*Retaliation in Employment;*
*42 U.S.C. §2000e-3(a)*

40. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

41. Defendant retaliated against Plaintiff in violation of Title VII and the PDA.

42. Plaintiff engaged in protected conduct within the meaning of Title VII and the PDA on November 18, 25 and December 3, 2019.

43. Plaintiff's protected conduct included requesting scheduling accommodation due to pre-birth medical appointments and pregnancy related-nausea that presented more acutely in the

morning hours, a request to speak with Defendants' human resources department about Plaintiff's supervisor exhibiting harassing and hostile behavior toward Plaintiff, and Plaintiff taking photographs of the content in her own digital personnel file and the company's unsecured emails between Defendants and Plaintiff's supervisor.

44. Defendants actively discouraged Plaintiff from engaging in protected conduct by

45. In response to Plaintiff's protected conduct, Defendants retaliated against her through adverse employment actions carried out by her supervisor, the Brazzells and their counsel.

46. Defendants' retaliatory adverse employment actions against Plaintiff included their write-ups, direct threats, decreased scheduling—which, in turn, decreased Plaintiff's opportunity to make commissions—and termination.

47. Defendants treated Plaintiff less favorably than her similarly situated counterparts who did not engage in protected conduct.

48. The effect of these adverse actions has been to deprive Plaintiff of equal employment opportunities, and otherwise adversely affect her status as an employee, because she engaged in protected conduct.

49. Defendants is liable for the acts and omissions of its agents and employees.

50. The retaliatory employment practices and other acts or omissions of Defendants and their agents, supervisors, and employees reflect Defendants' reckless, willful, and wanton indifference and/or hostility to Plaintiff's protected employment rights and status, directly and proximately resulting in such damages as may be proven at trial, including but not limited to lost income and benefits; lost employment opportunities; psychological, emotional, and mental anguish; distress, humiliation, embarrassment, and degradation; and Plaintiff's attorney's fees in this action.

## THIRD CLAIM FOR RELIEF
*Outrage*

51. Plaintiff hereby incorporates by reference all paragraphs of this Amended Complaint as if fully set forth herein.

52. Defendants knew or should have known that a reasonable person could view Defendants' (1) impeding requests for scheduling accommodations due to pre-birth medical appointments and pregnancy related-nausea, (2) making direct threats to Plaintiff after she requested to speak with human resources about Plaintiff's supervisor exhibiting harassing and hostile behavior toward Plaintiff, (3) reducing Plaintiff's work schedule because of discriminatory animus, and (4) retaliating after Plaintiff taking photographs of the content in her own digital personnel file and the company's unsecured emails between Defendants and Plaintiff's supervisor—as a whole—as extreme and outrageous conduct.

53. In concluding that Defendants' conduct was extreme and outrageous, a reasonable person could further view such conduct as the cause of Plaintiff's severe emotional distress.

54. The effect of Defendants' acts and omissions described above has not only resulted in illegal discrimination and retaliation but also severe emotional distress to the Plaintiff.

55. Defendants are liable for the acts and omissions of its agents and employees.

56. The extreme and outrageous conduct and other acts or omissions of Defendants and their agents, supervisors, and employees reflect Defendants' reckless, willful, and wanton indifference or hostility to Plaintiff's mental and emotional well-being, directly and proximately resulting in such damages as may be proven at trial, including but not limited to lost income and benefits; lost employment opportunities; psychological, emotional, and mental anguish; distress, humiliation, embarrassment, and degradation; and Plaintiff's attorney's fees in this action.

## FOURTH CLAIM FOR RELIEF
*Civil Conspiracy*

57. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

58. By and through the Brazzells, O'Neal, and Grantham, Defendants combined to accomplish the unlawful termination of the Plaintiff and used unlawful means of preventing her claim for unemployment.

59. The effect of Defendants' acts and omissions described above resulted in a conspiracy to unlawfully, oppressively, and/or immorally terminate Plaintiff because of her protected status and her engagement in protected activity.

60. Defendants are liable for the acts and omissions of its agents and employees.

61. The civil conspiracy and other acts or omissions of Defendants and its agents, supervisors, and employees reflect Defendants' reckless, willful, and wanton indifference or hostility to Plaintiff's protected employment rights and status, directly and proximately resulting in such damages as may be proven at trial, including but not limited to lost income and benefits; lost employment opportunities; psychological, emotional, and mental anguish; distress, humiliation, embarrassment, and degradation; and Plaintiff's attorney's fees in this action.

## FIFTH CLAIM FOR RELIEF
*Invasion of Privacy: False Light*

62. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

63. Defendants' conduct invaded Plaintiff's privacy by falsely portraying to Plaintiff's co-workers and members of the public that Plaintiff's termination was for criminal conduct, e.g., theft of company emails and time.

64. This sort of portrayal would offend a reasonable person.

65. Defendants made public this portrayal of Plaintiff's termination with knowledge or reckless disregard of the alleged falsity.

66. The effect of Defendants' acts and omissions described above false portrayal has left an indelible mark on Plaintiff's reputation in the community.

67. Defendants are liable for the acts and omissions of its agents and employees.

68. The use of false light and other acts or omissions of Defendants and its agents, supervisors, and employees reflect Defendants' reckless, willful, and wanton indifference or hostility to Plaintiff's protected employment rights and status and reputation in the community, directly and proximately resulting in such damages as may be proven at trial, including but not limited to lost income and benefits; lost employment opportunities; psychological, emotional, and mental anguish; distress, humiliation, embarrassment, and degradation; and Plaintiff's attorney's fees in this action.

### SIXTH CLAIM FOR RELIEF
*Invasion of Privacy: Wrongful Intrusion*

69. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

70. Defendants intentionally intruded upon Plaintiff's seclusion of her private affairs when Grantham repeatedly inquired into Plaintiff's protected status and how same would affect Plaintiff's work.

71. Defendants' prying into Plaintiff's sex life when they asked if the pregnancy was planned and their repeated inquiries into Plaintiff's protected status and how same would affect Plaintiff's work would be highly offensive to a reasonable person.

72. The effect of Defendants' acts and omissions described above has been to expose Plaintiff's private affairs to others and discriminate against Plaintiff's private affairs that are protected matters.

73. Defendants are liable for the acts and omissions of its agents and employees.

74. The wrongful and tortious employment practices and other acts or omissions of the Defendants and its agents, supervisors, and employees reflect Defendants' reckless, willful, and wanton indifference or hostility to Plaintiff's protected employment rights and status and her mental and emotional well-being and privacy, directly and proximately resulting in such damages as may be proven at trial, including but not limited to lost income and benefits; lost employment opportunities; psychological, emotional, and mental anguish; distress, humiliation, embarrassment, and degradation; and Plaintiff's attorney's fees in this action.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter in her favor and against Defendants, and grant:

A. Appropriate declaratory and other injunctive and/or equitable relief;

B. Compensatory and consequential damages, including damages for emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

C. All economic losses on all claims allowed by law;

D. Punitive damages on all claims allowed by law and in an amount to be determined at trial;

E. Pre- and post-judgment interest at the lawful rate; and

F. Any further relief that this Court deems just and proper, and any other relief as allowed by law.

Respectfully submitted this the 10th day of November, 2021.

/s/ M. Andrew Gable
M. Andrew Gable (ASB: 2512-A12P)
Keith Rodgers & Associates, LLC
640 South Lawrence Street
Montgomery, Alabama 36104
Email: drew@rodgers.legal
Telephone:   (334) 262-0508
Facsimile:    (334) 328-3383

/s/ Joseph Keith Rodgers
Joseph Keith Rodgers (ASB: 8287-S65R)
Keith Rodgers & Associates, LLC
640 South Lawrence Street
Montgomery, Alabama 36104
Email: jkeithrodgers@gmail.com
Telephone:   (334) 262-0508
Facsimile:    (334) 328-3383

/s/Britt S. Booth
Britt S. Booth (ASB: 7447-B59B)
Booth Law Office, LLC
P.O. 1387
Millbrook, Alabama 36054
Email: britbooth.esq@gmail.com
Telephone:   (334) 290-8018
Facsimile:    (334) 290-8036